E-FILED
Friday, 30 April, 2021  09:16:44 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

REGINALD CHANDLER-MARTIN, )
   Plaintiff, )
  )
vs. ) No. 21-3062
  )
OFFICER CHENOWORTH, et. al., )
   Defendants )

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for merit review of the Plaintiff's complaint. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff, a *pro se* prisoner, claims his constitutional rights were violated at Western Illinois Correctional Center by Correctional Officer Chenoworth, Warden Watson, Warden Collins, "Other Municipal Agents" including officers, sergeants, lieutenants, and shift commanders; and "Health Care Agents" including mental health physicians. (Comp, p. 3).

Plaintiff says Defendant Chenoworth wrote a false disciplinary ticket on March 6, 2019 accusing the Plaintiff of disobeying a director order and unauthorized movement within the prison. Defendant Chenoworth claimed Plaintiff was in Cell #15

1

when the officer gave three direct orders to close the cell door. The officer saw Plaintiff exit the cell and sent another officer to get Plaintiff's I.D. number. Plaintiff was assigned to Cell # 36.

Plaintiff was escorted to segregation and appeared before the Adjustment Committee on March 13, 2019. Plaintiff advised the committee since he was not assigned to Cell #15, the order to close the door was not directed at him. In addition, Plaintiff asked the committee to speak with other inmates and review any video recordings because Plaintiff says while he was standing close to Cell #15, he was not inside the cell.

On March 19, 2019, Plaintiff received the Adjustment Committee Report which found him not guilty of disobeying a direct order, but guilty of unauthorized movement. Defendant Warden Watson signed off on the final judgment which recommended one month of c-grade status. Nonetheless, Plaintiff said he was still in segregation. Plaintiff gave the report to a lieutenant who told Plaintiff he gave it to a shift commander, who in turn forwarded the information to the Warden.

Plaintiff says the "whole situation had been getting to me and I just snapped and asked for a crisis team as a mental health specialist did her seg. rounds." (Comp., p. 6). The Mental Health Specialist asked an unidentified officer to pull Plaintiff out of the cell, and Plaintiff was taken to a different room for evaluation.

Plaintiff explained the situation, but the Mental Health Specialist said she could not do anything to change Plaintiff's segregation status. Nonetheless, after talking to

Plaintiff she asked an unidentified Sergeant to move Plaintiff to a suicide watch cell. The Sergeant refused to move Plaintiff.

On March 22, 2019, Plaintiff caught the Warden's attention as he was doing rounds and explained the situation. Plaintiff was moved out of segregation that day.

Plaintiff filed a grievance which was denied, but it was recommended Plaintiff receive "9 days of unassigned pay of $3.06 for the days spend in segregation following the hearing." (Comp., p. 6).

Plaintiff has attached a copy of the Administrative Review Board response to his grievance which notes Plaintiff was in segregation from March 6, 2019 through March 22, 2019. The Warden signed off on the Adjustment Committee Report on March 14, 2019, but Plaintiff remained in segregation until March 22, 2019. Therefore, the board recommended Plaintiff received nine days of pay "for the days spent in segregation status following the hearing." (Comp, p. 10).

Plaintiff says Warden Collins is liable because he is responsible for overseeing correctional staff. All "Other Municipal Agents" are liable because they either played a part in the disciplinary hearing or did nothing when he remained in segregation. (Comp., p. 7)  All "Mental Health Agents" are responsible because they did help him get out of segregation. (Comp., p. 8). Plaintiff is requesting monetary damages for the "17 days" he spent in segregation. (Comp., p. 9).

Plaintiff says the Defendants violated his due process rights. The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that

one of these interests is at stake." *Wilkerson v Austin*, 545 U.S. 209, 221 (2005).  The Seventh Circuit has noted "an inmate's liberty interest in avoid segregation is limited." *Hardaway v. Meyerhoff,* 734 F.3d 740, 743 (7th Cir. 2013), *citing Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 697 (7th Cir.2009). To determine whether a plaintiff's time in segregation rises to the level of a constitutional violation, the Court must consider "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion,* 559 F.3d at 697 (emphasis in original).  Unless an inmate is housed in "exceptionally harsh conditions," relatively short terms of segregation will not violate a prisoner's due process rights. *Hardaway,* 734 F.3d at 743; *Marion,* 559 F.3d at 697–98.

Plaintiff was likely initially placed in segregation on investigative status pending the outcome of his disciplinary ticket.  If so, Plaintiff was only in segregation an extra eight or nine days.  Nonetheless, even if the Court considers the entire 16 days Plaintiff was in segregation, his length of his stay does not trigger the protections of the Due Process clause. *See Hardaway*, 734 F.3d at 744 (finding total of six months in segregation "alone is insufficient to rise to the level of a Fourteenth Amendment violation."); *Beamon v. Pollard*, 711 Fed.Appx. 794, 795 (7th Cir. 2018)(inmate's 135 days in segregation "insufficient to deprive him of a protected liberty interest."); *Smith v. Akpore*, 689 Fed.Appx. 458, 459–60 (7th Cir. 2017)(plaintiff's 30 days in investigative segregation and three months in disciplinary segregation "not long enough to raise a concern under the Due Process Clause."); *Lorenzo v. Pfister*, 2017 WL 3197730, at *4–5 (C.D.Ill. July 27, 2017)(inmate's one hundred day "placement in administrative detention or administrative segregation did not implicate a protected liberty interest.").

However, the amount of time Plaintiff spent in segregation does not, by itself, indicate a potential due process violation and Plaintiff makes no mention of his living conditions during this time. Therefore, the Court will allow Plaintiff one opportunity to file an amended complaint if he believes he can still articulate a Due Process violation.

Plaintiff is advised he must identify Defendants in his amended complaint who were personally responsible for the deprivation of his rights. *See Wilson v. Warren Cty., Illinois*, 2016 WL 3878215, at *3 (7th Cir. 2016). "A defendant is personally responsible 'if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.'" *Id. quoting Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The mere fact that a defendant was a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 USC §1983. *See Smith v. Gomez*, 550 F.3d 613, 616 (7th Cir. 2008)(supervisor liability not permitted under § 1983); *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992)(supervisors are not liable for the errors of their subordinates).

In addition, the fact that Plaintiff complained about his segregation status to "every c/o, officer, sergeant, lieutenant I saw on 1st, 2$^{nd,}$ and 3rd shift" as well as mental health staff, does not by itself make those individuals liable for his due process claim. The Seventh Circuit has "rejected the notion that 'everyone who knows about a prisoner's problems will incur § 1983 liability." *Aguilar v. Gaston-Camara*, 2017 WL 2784561, *4 (7th Cir. 2017) *quoting Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). To hold otherwise would allow an inmate to sue anyone he sends a letter to or anyone he speaks to as they pass his cell.

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. (Plaintiff's)s view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. *Burks*, 555 F.3d at 595.

Therefore, only individuals who were specifically response for assigning and keeping Plaintiff in segregation could be held liable for his due process claim.  A mental health worker could not assign or release an inmate from segregation.  A mental health worker would only be responsible for mental health care.

Plaintiff also mentions the Sixth and Eleventh Amendments in his complaint, but he has failed to articulate a violation of either provision.

Finally, Plaintiff has filed a motion for appointment of counsel.[5].  Plaintiff does not have a constitutional or statutory right to the appointment of counsel in this case. In addition, the Court cannot require an attorney to accept *pro bono* appointment in a civil case.  The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992).

In considering Plaintiff's motion, the Court must first consider whether "the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).  "This is a mandatory, threshold inquiry that

must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 2021 WL 456002, at *8 (7th Cir. 2021); *citing Davis v. Moroney*, 857 F.3d 748, 753 (7th Cir. 2017). [5].

Plaintiff has not indicated any attempt to find counsel on his own such as a list of attorneys contacted, or copies of letters sent or received. Therefore, his motion is denied with leave to renew. [5].

IT IS THEREFORE ORDERED:

1) Plaintiff's complaint is dismissed for failure to state a claim based on which relief can be granted pursuant to 28 U.S.C. §1915A.

2) Plaintiff's motion for appointment of counsel is denied with leave to renew. [5].

3) Plaintiff may file an amended complaint clarifying his claims within 21 days or on or before May 21, 2021. If Plaintiff does not file an amended complaint on or before May 21, 2021 or ignores the Court's directions in this order, his case will be dismissed.

4) The Clerk is to provide Plaintiff with a blank complaint form to assist him and reset the internal merit review deadline within 30 days.

ENTERED this 30th day of April, 2021.

s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE